## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

ADAM DEAN BROWN,

      Petitioner,

v.                                Case No. 3:20-cv-1377-LC/MJF

FLORIDA DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Adam Dean Brown, proceeding with counsel, has filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 3. Respondent ("the State") answered, providing relevant portions of the state court record. Docs. 7, 8, 13. Brown replied. Doc. 12. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Brown is not entitled to habeas relief.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

# I.    BACKGROUND AND PROCEDURAL HISTORY[2]

On the evening of July 29, 2012, Brown, while intoxicated, drove his car along Racetrack Road at speeds as high as 94 miles per hour in a 40 mph speed zone, until he lost control of the vehicle and crashed. Brown's passenger—Nicholas Snow—suffered serious injuries as a result of the crash. Brown's blood alcohol level at the time was .176 grams of alcohol per 100 milliliters of blood—over twice Florida's legal limit. Doc. 7-4, Ex. 4; Doc. 7-5, Ex. 5 (Trial Tr.).[3]

In Okaloosa County Circuit Court Case No. 2013-CF-1154, Brown was charged with Driving Under the Influence Causing Serious Bodily Injury. Doc. 7-1, Ex. 1 at 8. Snow died prior to Brown's trial due to complications from a tracheotomy he received after the accident. The jury was not informed of that fact. *See* Doc. 7-4, Ex. 4 at 79-82; Doc. 7-5, Ex. 5 at 334-35. The sole issue for trial was whether Brown was the driver. Doc. 7-4, Ex. 4 at 12 (Trial Tr.); Doc. 7-10, Ex. 10 at 9, 11 (Initial Br. on Direct Appeal). Indeed, defense counsel explained to the judge just before the trial began: "We're not conceding guilt on the charge itself, but I think even the State

---

[2] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. *See Jackson v. Virginia*, 443 U.S. 307 (1979).

[3] Citations to the state court record are to the electronically-filed exhibits attached to the State's answer. Docs. 7, 8. The court cites the docket entry number followed by the exhibit number and the page number (according to the Bates stamp number appearing at the bottom center of the page).

would agree in this case we're not going to be denying [the facts of] the blood alcohol level, intoxication or injury. We're simply arguing the first element, identity of the driver." Doc. 7-4, Ex. 4 at 12. The jury found Brown guilty as charged. Doc. 7-2, Ex. 2 at 280.

The trial court adjudicated Brown guilty and sentenced him to 51 months of imprisonment followed by 9 months of probation. Doc. 7-7, Ex. 7 at 553-65 (Am. J. & Sentence); Doc. 7-2, Ex. 2 at 336-39 (Order of Probation). The Florida First District Court of Appeal ("First DCA") affirmed the judgment on March 6, 2017, *per curiam* and without written opinion. *Brown v. State*, 231 So. 3d 404 (Fla. 1st DCA 2017) (Table) (copy at Doc. 7-12, Ex. 12).

On July 17, 2017, Brown, proceeding with counsel, filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later amended. Doc. 8-4, Ex. 19 at 16-36 (Mot. for Postconviction Relief); *Id*. at 41-84 (Am. Mot. for Postconviction Relief). The state circuit court summarily denied relief on five claims (Grounds 1-4 and 6), and set one claim (Ground 5) for an evidentiary hearing. Doc. 8-4, Ex. 19 at 93-126 (Order). After an evidentiary hearing, the state circuit court denied relief on Ground 5. Doc. 8, 8-1 & 8-2, Ex. 17 (Tr. of Postconviction Evidentiary Hr'g); Doc. 8-4, Ex. 19 at 196-255 (Evidentiary Hr'g Exhibits); Doc. 8-4, Ex. 19 at 256-83 (Order). The First DCA affirmed *per curiam*

and without written opinion. *Brown v. State*, 286 So. 3d 247 (Fla. 1st DCA 2019) (copy at Doc. 8-7, Ex. 22). The mandate issued January 10, 2020. Doc. 8-7, Ex. 22.

Brown filed his counseled federal habeas petition on January 27, 2020. Doc. 1) Brown's amended petition raises five claims of ineffective assistance of trial counsel. Doc. 3. The parties agree that Brown exhausted his state remedies by presenting all of his claims to the state courts in his Rule 3.850 proceeding. Doc. 3 at 12; Doc. 7 at 10; Doc. 12 at 15. The State asserts that Brown is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard. Doc. 7 at 18-34; Doc. 13.

## II.    RELEVANT LEGAL PRINCIPLES

### A.    Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[4] Justice O'Connor described the appropriate test:

---

[4] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

---

by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was

Page 6 of 44

incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement</u>.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## B.    Federal Law Governing Claims of Ineffective Assistance of Counsel

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

conduct from counsel's perspective at the time." 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)); *see also Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."). As a consequence of this burden, "when the evidence is unclear . . ., [courts] presume counsel performed reasonably and exercised reasonable professional judgment." *Blankenship v. Hall*, 542 F.3d 1253, 1274 (11th Cir. 2008) (citations omitted).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

### III. DISCUSSION

__Ground One__    __"Ineffective assistance of counsel by failing to object to the State's improper closing remarks." Doc. 3 at 5.__

Brown alleges that during rebuttal closing argument, the State argued for the first time that the injuries Brown suffered from the crash were consistent with him being the driver and being struck by the steering wheel. Brown asserts that this

argument was improper because no evidence was introduced at trial to support that argument. Brown claims that trial counsel was ineffective for failing to object. Doc. 3 at 5.

### A.    State Court's Decision

Brown presented this claim to the state courts as Ground 1 of his amended Rule 3.850 motion. Doc. 8-4, Ex. 19 at 51-53. The state circuit court identified the two-pronged *Strickland* standard as the controlling legal standard, Doc. 8-4, Ex. 19 at 95, and denied relief as follows:

> Defendant alleges that his attorney rendered ineffective assistance of counsel by failing to object to statements by the prosecutor during his rebuttal closing argument. Defendant alleges that the prosecutor improperly argued that Defendant's injuries were consistent with him being the driver and striking the steering wheel during the accident. More specifically, Defendant cites to a portion of the prosecutor's closing argument where the prosecutor states:
>
>> And last point with the injuries. Multiple injuries to the pelvic area and the center mass area of the torso area. I submit to you, that's exactly where a steering wheel would hit somebody if they were driving and that's exactly where his damage is, to the middle area. To his middle torso is exactly where a steering wheel would impact somebody at a high velocity, high rate of speed collision. That's what you can use your common sense to, when you apply the law and the evidence in this case and that's why he is guilty as charged. Thank you.
>
> Defendant argues that these comments "misled the jury into believing that the State possessed special knowledge about Brown's injuries being connected with a driver" and that because the prosecutor's comments were made for the first time during rebuttal

argument, Defendant did not have an opportunity to "address the improper argument to the jury."

"[C]ounsel is accorded wide discretion in closing argument." Foxworth v. State, 754 So. 2d 798, 799 (Fla. 2d DCA 2000). "Closing argument is an opportunity for counsel to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence." Merck v. State, 975 So. 2d 1054, 1061 (Fla. 2007). "[A] proper rebuttal argument is limited to a reply to what has been brought out in the defendant's closing argument." Watson v. State, 50 So. 3d 685, 686 (Fla. 3d DCA 2010). "[C]ounsel cannot be deemed ineffective for failing to object to a fair comment which is based on the evidence present during the trial." Valentine v. State, 98 So. 3d 44, 55 (Fla. 2012).

During the trial, Defendant testified that as a result of the accident he suffered a shattered left hip and right collar bone, a ruptured bladder, lacerated spleen, broken rib, and fractured vertebrae. Paramedic Lauren Flanagan testified that Defendant had multiple injuries, including pelvic injuries and internal injuries, and that the internal injuries were located in the mid section of torso area.

During Defendant's closing argument, defense counsel commented on Defendant's injuries to his "right clavicle, rib, and pelvis" and argued that "those injuries are indicative of him wearing a passenger seat belt."

Consequently, because Defendant argued during his closing that the nature of the injuries were indicative to him being a passenger, the prosecutor's argument on rebuttal appears to be a fair reply to what defense counsel asserted in his own closing argument. Moreover, in considering the trial testimony concerning Defendant's pelvic injury and internal injuries to the torso, the prosecutor's comments appear to contain fair and reasonable inferences drawn from that testimony. Accordingly, the Court cannot find that counsel performed deficiently by not objecting to the prosecutor's comments, as the objection would not be well taken. Hitchcock v. State, 991 So. 2d 337, 361 (Fla. 2008) ("Counsel cannot be deemed ineffective for failing to make a meritless objection.").

Moreover, even if somehow counsel's performance was deficient for failing to object to the comments, the Court's confidence in the outcome of the trial is not undermined due to the evidence introduced at trial. Specifically, in light of the evidence that Defendant was the registered owner of the vehicle, and Defendant's statements after the accident that his foot "got stuck" on the gas pedal, that he was sorry and never meant for it to happen, and that, in reference to the accident, he said he wasn't going a 100 miles an hour, the Court finds no reasonable probability that but for counsel's alleged deficient performance, the outcome of the trial would have been different. Accordingly, Ground 1 is denied.

Doc. 8-4, Ex. 19 at 94-96 (footnotes citing to trial transcript omitted). The First DCA summarily affirmed without explanation. Doc. 8-7, Ex. 22.

## B.    Brown's Claim Does Not Warrant Habeas Relief

The First DCA's summary affirmance is an "adjudication on the merits" of Brown's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id*. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal courts

employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. ___, 138 S. Ct. 1188, 1192 (2018). Consistent with *Wilson*, this court presumes that the First DCA rejected Brown's claim for the reasons provided by the state circuit court.

The state court's decision is not "contrary to" clearly established Federal law, because the state court identified and applied the two-part *Strickland* standard. *See Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Brown must show that the state court's application of the *Strickland* standard was unreasonable.

In reviewing the state court's decision, this court defers to the state court's factual findings, because they are amply supported by the record and because Brown has not rebutted them with clear and convincing evidence to the contrary. *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.") (citing 28 U.S.C. § 2254(e)).

Given the state court's factual findings and the trial transcript, fairminded jurists could concur in the court's conclusion that Brown failed to establish deficient

performance and prejudice under *Strickland*. An objection to the prosecutor's remarks was futile, given that (1) the prosecutor was advocating for a conclusion that reasonably could be reached from the evidence, and (2) the prosecutor was responding to defense counsel's remarks that advocated for the jury to reach the conclusion that the same injuries were caused by the passenger-side seat belt.

"It is not ineffective assistance of counsel to fail to make an objection that is not due to be sustained." *Meders v. Warden, Georgia Diagnostic Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019); *see also Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."); *Green v. Georgia*, 882 F.3d 978, 987 (11th Cir. 2018) (holding that habeas petitioner could not possibly have suffered *Strickland* prejudice where the objection that was not made would have been futile); *Stephens v. Sec'y, Fla. Dep't of Corr.*, 678 F.3d 1219, 1227 (11th Cir. 2012) (rejecting ineffective-assistance claim where prosecutor's comments were not improper).

The state court's rejection of Brown's claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard. Brown is not entitled to habeas relief on Ground One.

**Ground Two**        **"Ineffective assistance of counsel by failing to object to the introduction of Brown's statements based on the accident report privilege." Doc. 3 at 7.**

Brown alleges that he did not make any statements to law enforcement at the scene of the accident, but he did make statements to an EMT (Paula Cox) and a paramedic (Lauren Flanagan). Doc. 3 at 7. Ms. Cox testified at trial:

> A. [Cox] I can't recall if I asked him [Brown] if he was the driver or not, the best of my ability, but he never—I do recall asking him that, but he never said, yes or no. He just said his foot got stuck on the pedal and he is so sorry. He didn't mean for it to happen.
>
> Q. [Prosecutor] Would that be the gas pedal?
>
> A. Yes.

Doc. 7-4, Ex. 4 at 138-39.

Ms. Flanagan testified that Brown told her that "there was a red truck pulling out and they swerved to miss it." Doc. 7-4, Ex. 4 at 148. Brown also said: "I'm sorry, I never meant for this to happen." *Id*. at 155.

Brown claims that trial counsel was ineffective for failing to object to the testimony on the ground that Brown's statements were subject to Florida's accident report privilege. Doc. 3 at 7.

### A.    State Court's Decision

Brown presented this claim to the state courts as Ground 2 of his amended Rule 3.850 motion. Doc. 8-4, Ex. 19 at 53-55. The state circuit court identified the

two-pronged *Strickland* standard as the controlling legal standard, Doc. 8-4, Ex. 19 at 95, and denied relief for these reasons:

> Defendant alleges that based on the accident report privilege provided in section 316.066(4), Florida Statutes, his trial counsel rendered ineffective assistance of counsel for failing to object to the introduction at trial of statements Defendant made to a paramedic and EMT at the scene of the accident. Defendant alleges that "[b]ecause the statements were inadmissible under the accident report privilege, this Court erred by allowing the statements to be introduced" and that "[c]ounsel was ineffective for not fully arguing and preserving this issue for appeal."

> "A defendant's claim that his counsel offered ineffective assistance at trial, for whatever reason, must be analyzed under the standard the Supreme Court enunciated in *Strickland*." Carratelli v. State, 961 So. 2d 312, 320 (Fla. 2007). "[F]ailure to preserve issues for appeal does not show the necessary prejudice under *Strickland*." Strobridge v. State, 1 So. 3d 1240, 1242 (Fla. 4th DCA 2009). "[I]n evaluating prejudice, the *Strickland* standard focuses on the effect of the deficient performance on the reliability of the outcome in the proceeding in which the deficient performance occurred rather than on whether counsel's deficient performance in the trial court affected the defendant's appellate rights." State v. Bouchard, 922 So. 2d 424, 430 (Fla. 2d DCA 2006).

> Consequently, because Defendant focuses his allegations of prejudice on the outcome of his appeal, rather than the outcome of the proceedings in this Court, his claim is facially insufficient for failure to allege the requisite prejudice. Because Defendant has previously been afforded an opportunity to amend his motion, he is not entitled to another. See Fla. R. Crim. P. 3.850(f).

> Nevertheless, even if the claim were somehow facially sufficient, he is not entitled to relief. Section 316.066(4), Florida Statutes, states:

> > Except as specified in this subsection, each crash report made by a person involved in a crash and any statement

made by such person to a ***law enforcement officer for the purpose of completing a crash report*** required by this section shall be without prejudice to the individual so reporting. Such report or statement may not be used as evidence in any trial, civil or criminal. However, subject to the applicable rules of evidence, a law enforcement officer at a criminal trial may testify as to any statement made to the officer by the person involved in the crash if that person's privilege against self-incrimination is not violated. The results of breath, urine, and blood tests administered as provided in s. 316.1932 or s. 316.1933 are not confidential and are admissible into evidence in accordance with the provisions of s. 316.1934(2).

The clear and plain language of the statute states unambiguously that the privilege applies to statements made to a law enforcement officer for the purpose of creating a crash report. The Court finds that the statements at issue in the present case do not fall under the purview of section 316.066(4), for at least the reason that they were not made to a law enforcement officer for the purpose of creating a crash report. Consequently, the Court cannot find that counsel rendered ineffective assistance by failing to object on the basis alleged by Defendant. Hitchcock v. State, 991 So. 2d 337, 361 (Fla. 2008) ("Counsel cannot be deemed ineffective for failing to make a meritless objection."). Accordingly, Ground 2 is denied.

Doc. 8-4, Ex. 19 at 97-98. The First DCA summarily affirmed without explanation.

Doc. 8-7, Ex. 22.

### B.    Brown's Claim Does Not Warrant Habeas Relief

The First DCA's summary affirmance is an "adjudication on the merits" of

Brown's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*,

562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s] through" the

First DCA's unexplained decision to the circuit court's order denying postconviction

relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

The state court's decision is not "contrary to" clearly established Federal law, because the state court identified and applied the two-part *Strickland* standard. *See Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Brown must show that the state court's application of the *Strickland* standard was unreasonable.

Brown argues that the state court's decision was unreasonable because, under Florida law, there is no requirement that the statement be made directly to an investigating law enforcement officer and, notwithstanding, Cox and Flanagan assumed a quasi-law-enforcement function. Doc. 12 at 23-24 (citing *Nash Miami Motors, Inc. v. Ellsworth*, 129 So. 2d 704 (Fla. 3d DCA 1961)).

Brown's claim that the state court unreasonably applied *Strickland* obviously depends upon this court determining that trial counsel's performance was deficient, but first this court would have to conclude that the state court misinterpreted state law. In *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338 (11th Cir. 2005), the Eleventh Circuit addressed a similar circumstance. Petitioner Herring argued that his trial counsel was ineffective for failing to make a state-law-based objection to the introduction of evidence at his trial. The state court concluded that Herring's proposed objection would have been overruled and, therefore, counsel was not

deficient. *Id*. at 1354-55. The Eleventh Circuit held: "The [state court] already has told us how the issues would have been resolved under Florida state law had [Herring's counsel] done what Herring argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" *Id*. (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir.1997)).

The Eleventh Circuit followed the same approach in a more recent decision, *Jones v. Sec'y, Dep't of Corr.*, 487 F. App'x 563 (11th Cir. 2012). In *Jones*, the habeas petitioner claimed that his trial counsel was ineffective for failing to object to evidence on the state-law grounds of lack of foundation and relevance. The Eleventh Circuit held:

> The state collateral court, in denying Jones' motion for postconviction relief, concluded that the prosecution had laid the proper foundation to introduce the shotgun into evidence, the defense had no basis under state law for objecting to its admission, and the question of whether it was the same gun that was used in the charged robbery was for the jury to decide. The Third District Court of Appeal of Florida affirmed that decision.

> When the state courts have already answered the question of how an issue would have been resolved under that state's law had defense counsel done what the petitioner argues he should have done, "federal habeas courts should not second-guess them on such matters" because "it is a fundamental principle that state courts are the final arbiters of state law." *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (quotation marks omitted). Because we will not "second guess" the Florida state courts' conclusion that the shotgun was admissible under state evidentiary law, Jones cannot demonstrate that his counsel was

deficient for failing to object to its introduction. *See id*. A lawyer cannot be deficient for failing to raise a meritless claim. *Freeman v. Attorney Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008). The state courts' rejection of this claim was neither contrary to nor involved an objectively unreasonable application of *Strickland*.

*Id*. at 566.

Here, as in *Herring* and *Jones*, the state courts already have answered the question of what would have happened had trial counsel made Brown's proposed state-law-based objection—the objection would have been overruled. Because this court will not "second guess" the Florida state court's conclusion that the evidence was not subject to exclusion under Florida's accident report privilege, Brown cannot demonstrate that counsel was deficient for failing to object or that he was prejudiced by the lack of an objection. *See Herring* at 1355; *see also Meders*, 911 F.3d at 1354; *Green*, 882 F.3d at 987; *Pinkney*, 876 F.3d at 1297.

The state court's rejection of Brown's claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard. Brown is not entitled to federal habeas relief on Ground Two.

## Ground Three      "Ineffective assistance of counsel by failing to offer evidence that corroborated Williams' testimony." Doc. 3 at 8.

At trial, the defense sought to introduce the testimony of Sherri Williams. Williams would have testified that Nicholas Snow told her that he was the driver. The State made an oral motion *in limine* to exclude the testimony as inadmissible

hearsay. Doc. 7-4, Ex. 4 at 90-91. The motion was argued just before trial was to begin. *Id*. at 90-102. The defense maintained that Williams's testimony fell under Florida's hearsay exception as a statement against interest by a declarant who was unavailable as a witness. *Id*. at 91-98; *see also* Fla. Stat. § 90.804(2)(c).[5]

During the defense proffer of Williams's testimony, the only information Williams could provide was the statement itself—that she asked Snow if he was driving the night of the accident and he responded: "I was driving my friend[']s car and I could have killed my friend." Doc. 7-4, Ex. 4 at 99-100. Williams was unable to provide any information concerning the circumstances surrounding Snow's statement, including very basic facts of when and where it was made. *Id*. Williams stated that she was Snow's friend and that she did not know Brown at the time Snow made the statement to her. *Id*.

---

[5] Section 90.804(2)(c) provides:

> A statement which, at the time of its making, was so far contrary to the declarant's pecuniary or proprietary interest or tended to subject the declarant to liability or to render invalid a claim by the declarant against another, so that a person in the declarant's position would not have made the statement unless he or she believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is inadmissible, unless corroborating circumstances show the trustworthiness of the statement.

The trial court excluded Snow's statement because it was hearsay and because there were no "circumstances . . . that provided the Court with considerable assurance of [its] reliability." Doc. 7-4, Ex. 4 at 101. The trial court explained:

> Mr. Gates and Ms. Stanley [Defense Counsel], I have some serious concerns, you know, like all processes, is that I take something to an extreme and see if it makes sense and then bring it back. And to take your argument to the extreme, it would be—the jury should hear a witness that says, I heard someone else commit the crime, without any indication of assurance or reliability of that testimony. If it is the Court's job to be the gatekeeper of hearsay testimony and whether it's reliable or not, I have some difficulty making that decision in the defendant's favor. And it appears that the Court does have that job today. So based on that, I don't see any circumstances that provide, to use the language in Curtis, that provided the Court with considerable assurance of their reliability. I just don't see any of that.
>
> Other than that it would be a statement against Mr. Snow's interest. But I don't think that that just, in itself, especially since he is deceased, at this point, I don't see that as allowing you to provide that testimony to the State. So the State—I mean to the jury. So the State's motion in limine is granted regarding those statements from Ms. Williams.

Doc. 7-4, Ex. 4 at 101-02 (referencing *Curtis v. State*, 876 So. 2d 13 (Fla. 1st DCA 2014)).

Brown claims that trial counsel was ineffective during the proffer because she failed to introduce "available corroborating evidence." Doc. 3 at 8. Brown identifies the "corroborating evidence" as this:

> First, either Snow or Brown was the driver. Second, no physical evidence excluded either as the driver. Third, a witness who observed the car just prior to the accident observed Snow as the driver. Fourth,

Snow made the statement to a friend. Fifth, Williams did not know Brown at the time Snow made the statement. Sixth, at the time Snow made the statement, Snow expressed concern about the $100,000 policy he received from Brown's insurance company. Seventh, Snow could be criminally liable as the driver. Eighth, Brown permitted others to drive his car in the past, including Snow.

Doc. 12 at 26; *see also* Doc. 8-4, Ex. 19 at 56 (Am. Rule 3.850 Mot.).

For context, trial counsel stated during her proffer:

> MS. SANDLER [Defense Counsel]: Actually, Your, Honor, they [Snow's statements to Williams] would be statements against pecuniary interest and statements against interests. Because Mr. Snow had been interviewed by Officer Sheffield, he was well aware that a criminal investigation was ongoing. We expect Ms. Williams to testify that Nicholas told her, I was driving. I could have killed my friend, which would absolutely be a statement against penal interest knowing there was an ongoing investigation. We also, perhaps, expect testimony, Nicholas Snow received $100,000 from Mr. Brown's insurance company and that statement was made after that fact.

Doc. 7-4, Ex. 4 at 91. Thus, trial counsel made the trial judge aware of that particular information.

During the proffer, the trial judge also learned—through Williams's testimony itself—that (1) Williams was Snow's friend; and (2) Williams did not know Brown at the time Snow made the statement to her. Doc. 7-4, Ex. 4 at 99-100. And the trial judge already knew that: (1) either Snow or Brown was the driver; (2) no physical evidence excluded either man as the driver; and (3) a witness (Ms. Britton-Peters), who observed the car speeding just prior to the crash, observed physical features of the driver and the passenger (which, the defense argued, placed Brown as the

passenger). That information had been fleshed out prior to trial in a defense motion to dismiss the charge against Brown. Doc. 7-1, Ex. 1 at 39-48 (Mot. to Dismiss); Doc. 7-3, Ex. 3 at 470-91 (Tr. of Hr'g on Mot. to Dismiss). As to Brown's last item of "corroborating evidence," there was no evidence that Brown had permitted Nicholas Snow to drive his car in the past. Doc. 7-5, Ex. 5 at 268-79 (Brown's Trial Test.). When Brown listed the people he had allowed to drive his car in the past, Snow's name was not mentioned. *Id*. at 273-274.

### A.    State Court's Decision

Brown presented this claim to the state courts as Ground 3 of his amended Rule 3.850 motion. Doc. 8-4, Ex. 19 at 55-57. The state circuit court identified the two-pronged *Strickland* standard as the controlling legal standard, Doc. 8-4, Ex. 19 at 95, and denied relief for these reasons:

> Defendant alleges that his attorney rendered ineffective assistance of counsel by failing to offer evidence that would have corroborated testimony from Sherri Williams that Nicholas Snow, not Defendant, was the driver at the time of the accident. Defendant alleges that this Court "denied the admission of Williams' testimony because there was not considerable assurance of reliability." Defendant lists multiple circumstances that his attorney should have allegedly brought to the court's attention. Defendant argues that had his attorney done so, "Williams' testimony would have been presentable to the jury" and Defendant would have been found not guilty.

> Even if counsel's performance was deficient as alleged, and even if William's [sic] testimony had been admitted and presented to the jury, the Court's confidence in the outcome of the trial is not undermined due to the evidence of Defendant's statements, that his foot

"got stuck" on the gas pedal, that he was sorry and never meant for it
to happen, and that, in reference to the accident, he said he wasn't going
a 100 miles an hour. Consequently, the Court finds no reasonable
probability that but for counsel's alleged deficient performance, the
outcome of the trial would have been different. Accordingly, Ground 3
is denied.

Doc. 8-4, Ex. 19 at 98-99 (footnotes citing to trial transcript omitted). The First DCA

summarily affirmed without explanation. Doc. 8-7, Ex. 22.

### B.     Brown's Claim Does Not Warrant Habeas Relief

The First DCA's summary affirmance is an "adjudication on the merits" of

Brown's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*,

562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s] through" the

First DCA's unexplained decision to the circuit court's order denying postconviction

relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S.

Ct. at 1192.

The state court's decision is not "contrary to" clearly established Federal law,

because the state court identified and applied the two-part *Strickland* standard. *See*

*Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief,

therefore, Brown must show that the state court's application of the *Strickland*

standard was unreasonable.

Brown argues that the state court's decision involved an unreasonable

application of *Strickland*'s prejudice prong because the state court "ignore[d] the

lack of evidence and conflicting evidence presented at trial." Doc. 12 at 27. Brown emphasizes that there was no physical evidence establishing the identity of the driver, and that Williams's testimony would have "corroborate[d] Alexandra Peters' testimony that just prior to the accident she observed someone other than Brown as the driver." Doc. 12 at 27-28.

A fairminded jurist could concur in the state court's conclusion that Brown failed to establish that there is a reasonable probability the result of his trial would have been different had Williams's testimony been admitted. Although there was no physical evidence establishing the identity of the driver, Brown's own version of events—as he related it to EMT Cox, paramedic Flanagan, and Brown's friend Mr. Bruce—was that his foot got stuck on the gas pedal, that he never meant for the accident to happen, and that he was not going 100 miles per hour. Doc. 7-4, Ex. 4 at 138-39 (Cox's Trial Test.); *Id.* at 148, 155 (Flanagan's Trial Test.); Doc. 7-5, Ex. 5 at 225 (Bruce's Trial Test.). Brown was the registered owner of the vehicle involved in the crash. Doc. 7-4, Ex. 4 at 165; Doc. 17-5, Ex. 5 at 282.

Although Brown testified at trial, he stated that remembered "nothing" about being in the car on the night of the crash, and that he remembered "nothing" in regard to driving on the night of the crash. Doc. 7-5, Ex. 5 at 278.

Defense witness Alexandra Britton-Peters testified that on the night of the accident, she was leaving work at a Domino's Pizza located on Racetrack Road.

Doc. 17-5, Ex. 5 at 247-63. Peters saw the "light silver" car (Brown's car) speeding down the road just before it crashed. *Id*. at 246-48. Peters observed the speeding car for 30-45 seconds. *Id*. at 251-52. Peters observed that the driver was a "husky guy" with a "shaved head or really short, like white blonde hair." *Id*. at 249. The driver was "looking around . . . like looking for something in the car." *Id*. Peters observed that the passenger was "very skinny" and "reclined back a little bit." *Id*. The man in the passenger's seat had "dark brown hair." *Id*. Peters testified that she did not see the driver of the car in the courtroom, but that she "possibly" saw the passenger, and that Adam Brown "may be" the passenger although "he looks a lot different." *Id*. at 250. Peters did not see the actual crash; she saw the aftermath. Peters described the sound the car made before the crash: "And then it was like somebody putting the gas pedal all the way to the floor. . . . You could just hear the RPMs going all the way up." *Id*. at 247. On cross-examination by the prosecutor, Peters testified that she did not see the driver's face. Peters remembered stating to police (in a written statement) that the driver had his face turned toward the passenger, so Peters did not see the driver's face. *Id*. at 263.

There is ample room for reasonable disagreement about whether Brown established that there was a substantial likelihood the result of his trial would have been different had trial counsel expanded her proffer as Brown suggests and had Williams's testimony been admitted. But for precisely that reason—because

fairminded jurists could disagree on whether the state court's decision was correct—the standard for granting federal habeas relief is not satisfied. *See Shinn v. Kayer*, ___ U.S. ___, 141 S. Ct. 517, 520 (2020) (holding that the Ninth Circuit erred in ordering issuance of a writ of habeas corpus "despite ample room for reasonable disagreement about the prisoner's ineffective-assistance-of-counsel claim," and that "the Court of Appeals clearly violated this Court's AEDPA jurisprudence."); *Davis v. Ayala*, 576 U.S. 257, 269-70 (2015) (confirming that "a state-court decision is not unreasonable if fairminded jurists could disagree on its correctness;" and that a habeas petitioner "must show that the state court's decision to reject his claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." (internal quotation marks and citation omitted)). *Meders*, 911 F.3d at 1355 (holding that the petitioner was not entitled to habeas relief because "not every reasonable jurist would conclude" that the state court's decision was an unreasonable application of the *Strickland* standard).

The state court's conclusion that Brown failed to satisfy the *Strickland* standard was "not so obviously wrong as to be beyond any possibility for fairminded disagreement," and that is "the only question that matters" under § 2254(d). *Shinn*, 141 S. Ct. at 526 (internal quotation marks and citation omitted). Brown, therefore, is not entitled to habeas relief on Ground Three.

**Ground Four**    **"Defense Counsel provided ineffective assistance of counsel by failing to impeach Bruce with prior inconsistent statements." Doc. 3 at 10.**

Brown testified at trial that he had allowed other people to drive his vehicle, including William Bruce, Ashely (a former girlfriend), and Bryce Bly. Doc. 7-5, Ex. 5 at 273. Brown testified specifically with regard to William Bruce, that Bruce once drove Brown's car to Atlanta—with Bruce's girlfriend—to visit Bruce's father. *Id*. at 274.

After Brown testified, the State re-called Bruce as a rebuttal witness. *Id*. at 288. Bruce testified that he took a road trip to Atlanta with Brown in Brown's vehicle; that Brown drove the vehicle the entirety of the trip; and that Bruce never drove Brown's vehicle during that trip. *Id*. at 288. Defense counsel then asked Bruce:

> Q. (By Mr. Gates) Do you recall speaking with Officer Sheffield about this case?
>
> A. [Mr. Bruce] When I did my first, I believe I interviewed with him once or twice.
>
> Q. Isn't it true that during that conversation you actually told him that you and your fiancé were the only one's [sic] in that vehicle on that trip to Atlanta?
>
> A. Me and my fiancé?
>
> Q. Or girlfriend at the time?
>
> A. I don't recall.
>
> MR. GATES: No other questions, Your Honor.

Doc. 7-5, Ex. 5 at 290.

Brown claims that trial counsel Gates was ineffective because he failed to take the additional step of "impeach[ing] Bruce with an available video in which Bruce had previously told law enforcement that Brown did not accompany them on the Atlanta trip." Doc. 3 at 10.  Brown asserts that Attorney Gates should have "tr[ied] to refresh Bruce's recollection" by showing him the videotape, and that by doing so, "Bruce would have been forced to admit to the prior inconsistent statement." Doc. 8-4, Ex. 19 at 57.

Brown claims that he was prejudiced by counsel's deficiency, because "[t]his would have case doubt into Bruce's credibility and testimony, including Bruce's prior testimony that Brown had told him that he wasn't going a 100 miles per hour at the time of the accident." *Id*. at 57-58. Brown also asserts that confronting Bruce with the video would have "defend[ed] against the State's credibility attack on Brown and his testimony that he permitted others to drive his vehicle." *Id*. at 58.

### A.    State Court's Decision

Brown presented this claim to the state courts as Ground 4 of his amended Rule 3.850 motion. Doc. 8-4, Ex. 19 at 57-58. The state circuit court identified the two-pronged *Strickland* standard as the controlling legal standard, Doc. 8-4, Ex. 19 at 95, and denied relief for these reasons:

Defendant cites to his trial testimony that he allowed people to drive his car, and his testimony concerning a time where he "allowed [William] Bruce and his girlfriend to borrow his car and drive to Atlanta." Defendant alleges that at trial the "State recalled Bruce to testify that Brown accompanied him to Atlanta and that he never drove Brown's car during the trip." Defendant states that his attorney "attempted to impeach Bruce's rebuttal testimony because a video existed where Bruce had previously told law enforcement that Brown did not accompany him on the Atlanta trip[,]" and when questioned about the prior conversation, Mr. Bruce responded by saying, "I don't recall." Defendant alleges that his attorney "did not try to refresh Bruce's recollection and complete the impeachment process." Defendant alleges that had counsel "shown Bruce the video, Bruce would have been forced to admit to the prior inconsistent statement." Defendant alleges that this "would have cast doubt into Bruce's credibility and testimony, including Bruce's prior testimony that Brown had told him that he wasn't going a 100 miles per hour at the time of the accident."

The Court finds that even if counsel had "completed the impeachment process" as argued by Defendant in his motion, the Court finds no reasonable probability that the outcome of the trial would have been different. Even if the jury chose to disbelieve Bruce's testimony that Defendant told him he wasn't going a 100 miles per hour, the jury would still have heard evidence that Defendant was the registered owner of the vehicle and that after the accident he had said that his foot "got stuck" on the gas pedal and that he was sorry and never meant for it to happen. Based on this evidence, even if counsel performed deficiently as alleged by Defendant, the Court cannot find that but for that deficient performance there is a reasonable probability that the outcome of the trial would have been different. Accordingly, Ground 4 is denied.

Doc. 8-4, Ex. 19 at 99-100 (footnotes citing to trial transcript omitted). The First

DCA summarily affirmed without explanation. Doc. 8-7, Ex. 22.

**B.    Brown's Claim Does Not Warrant Habeas Relief**

The First DCA's summary affirmance is an "adjudication on the merits" of Brown's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

The state court's decision is not "contrary to" clearly established Federal law, because the state court identified and applied the two-part *Strickland* standard. *See Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Brown must show that the state court's application of the *Strickland* standard was unreasonable.

Brown has failed to show that every fairminded jurist would conclude that had his trial counsel used the videotape against Bruce, there is a "substantial, not just conceivable," likelihood that the result of his trial would have been different. *See Richter*, 562 U.S. at 112. Although Attorney Gates did not play the videotape of Bruce's statements to police describing a trip to Atlanta in Brown's car, defense counsel pursued other means of discrediting or lessening the impact of Bruce's overall testimony. Counsel, when cross-examining Bruce during the State's case in chief, elicited Bruce's admission that he spoke to a defense witness (Ms. Britton-

Peters) about the case during a recess, in direct violation of the trial judge's order. Doc. 7-5, Ex. 5 at 230-31. This potentially rendered *all* of Bruce's testimony suspect (and not just his testimony about whether Brown ever let Bruce drive his car).

Additionally, the impeachment of Bruce about whether he personally ever drove Brown's car did nothing to undermine the State's strongest evidence against Brown: (1) Brown's own damning statements to EMT Cox and paramedic Flanagan immediately after the crash and (2) the fact that the vehicle involved in the crash was Brown's car. Moreover, it is not reasonably likely that defense counsel's impeachment of Bruce with his pretrial statements to police would have caused the jury to give any different weight to Brown's or Ms. Britton-Peters's testimony on the issue of identity.[6]

The state court's rejection of Brown's claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard. Brown is not entitled to federal habeas relief on Ground Four.

---

[6] Again, Brown could not remember any facts concerning who drove his car on the night of the accident. Ex. 7-5, Ex. 5 at 268-85. Brown never testified, or inferred, that he let Nicholas Snow drive his car on the night of the crash or on any other occasion. Ex. 7-5, Ex. 5 at 268-85. Although Brown testified that he let other people drive his car, the names he listed did not include Snow. *Id*. at 273-74.

**Ground Five**      **"Ineffective assistance of counsel by failing to consult and hire an accident reconstruction expert for trial, or alternatively, newly discovered evidence of actual innocence." Doc. 3 at 16.**

Brown alleges that an accident reconstruction expert would have established that he was not driving at the time of the accident. Doc. 3 at 16. Brown claims that (1) trial counsel was ineffective for failing to retain an accident reconstruction expert; and (2) the findings of an accident reconstruction expert Brown hired after trial "supports Brown's actual innocence." *Id*.

### A.      Brown's Ineffective-Assistance-of-Trial-Counsel Claim

#### 1.      *State Court's Decision*

Brown presented his ineffective-assistance claim to the state courts as Ground 5 of his amended Rule 3.850 motion. Doc. 8-4, Ex. 19 at 58-61. The state circuit court conducted an evidentiary hearing on the claim. Three witnesses testified at the evidentiary hearing: (1) Dr. Benedict (Brown's postconviction accident reconstruction expert); (2) Brown himself; and (3) Attorney Travis Gates (Brown's trial counsel). *See* Doc. 8, 8-1 and 8-2, Ex. 17 (Tr. of Postconviction Evidentiary Hr'g); Doc. 8-4, Ex. 19 at 196-255 (Evidentiary Hr'g Exhibits).

After the evidentiary hearing, the state court entered a written order denying postconviction relief. Doc. 8-4, Ex. 19 at 256-83. The state court made the following findings of fact:

## Hearing

Dr. Benedict testified that he is a biomechanical engineer, and that he reviewed the evidence in this case to reconstruct the accident and determine who was driving the vehicle. He testified that he reviewed photographs taken by law enforcement, the accident report, transcripts from the direct appeal, transcripts of the depositions, and medical reports. Dr. Benedict provided detailed testimony concerning his reconstruction of the accident, and he opined that Defendant was the passenger in the vehicle and that his injuries were not attributable to being thrown forward and hitting the steering wheel. Dr. Benedict testified that, as part of his reconstruction of the accident, he "considered what people saw, not what they said they heard," so he did not consider testimony from a witness who said that Defendant told her his foot got "stuck on the pedal."FN2

> FN2   EMT Paula Cox testified in her deposition on September 4, 2013 (and during trial), that Defendant told her that his "foot got stuck on the pedal." See Attachment A (deposition transcript, in relevant part) and Attachment B (trial transcript, in relevant part).

Defendant testified at the evidentiary hearing and stated that he was not aware of Dr. Benedict's testimony at the time of his trial. Defendant testified that he was aware that his trial attorney had contacted "Cummings" for an accident reconstruction but that counsel did not mention a "specific person." Defendant testified that his attorney told him "vaguely" that the expert indicated that "it was probably your guy." Defendant testified that he does not remember the accident but has "vague recollections of that day."

Attorney Travis Gates testified that he represented Defendant in this case. Mr. Gates testified that "almost from the beginning" of his work on the case "it was obvious" to him that the identity of the driver would be an issue. Mr. Gates testified that at the time he began working on the case, Mr. Snow had passed away, and Mr. Brown maintained that he did not know who was driving. Mr. Gates testified that there were inconsistent statements from witnesses concerning the identity of the driver. Mr. Gates testified that he contacted Cummings Scientific,

LLC ("Cummings") regarding the issue of driver identity. Mr. Gates testified that he provided Cummings with "everything we had" which included "medical records, depositions, transcripts, photographs that we were given by the police department, [and] photographs from the scene." Mr. Gates testified that Beau Biller of Cummings "came out to the impound lot and took pictures of the vehicle" and "took some measurements" and that Defendant was made aware of all of these circumstances. Mr. Gates testified that on June 5, 2014, he received an email from Cummings. Mr. Gates testified that after receiving that email (which stated that Defendant's pelvic injuries were problematic because they could be evidence of steering wheel contact and without further information as to the location of the occupants of the vehicle post-ejection there was not enough evidence to determine who was driving the vehicle), he was "upset that he [Mr. Biller] had come to that conclusion" and called him. Mr. Gates testified that, in regard to the post-ejection positions of the vehicle occupants, he told Mr. Biller that the information "was in the depositions." Mr. Gates testified that during that phone conversation he also discussed the witness statements with Mr. Biller, including statements indicating that Defendant was not the driver. Mr. Gates testified that after he told Mr. Biller that the information concerning the post-ejection location of the vehicle occupants was contained in the records, Mr. Biller "still said that he felt that the injuries were problematic and that the report would probably indicate that Adam's the driver of the vehicle." Mr. Gates testified that at that time he was concerned about having a defense expert generate such a report that would be discoverable by the State. Mr. Gates testified that after his conversation with Mr. Biller, he had a phone conversation with Defendant in which he read the email from Cummings to him, relayed his conversation with Mr. Biller, and told him that he did not think Mr. Biller should prepare the report. Mr. Gates testified that Defendant agreed with the decision.

Doc. 8-4, Ex. 19 at 257-59.

The state circuit court's order identified the two-pronged *Strickland* standard as the controlling legal standard for Brown's ineffective-assistance-of-counsel claim, Doc. 8-4, Ex. 19 at 259, and denied relief for these reasons:

The Court finds that the testimony of Mr. Gates is credible. The Court finds that after receipt of the email from Cummings that indicated additional information about the positioning of the vehicle occupants was needed to make a determination of driver identity, Mr. Gates contacted Mr. Biller and told him that the specific information concerning the positioning of the vehicle occupants after their ejection from the vehicle was contained in the records that had already been provided to Cummings. Mr. Gates then further discussed the matter with Mr. Biller and discussed specific witness statements, including a witness statement indicating that Defendant was not the driver. Because Mr. Gates was then informed by Mr. Biller that if a report were prepared it would likely indicate that Defendant was the driver of the vehicle, Mr. Gates made a reasonable tactical decision to not pursue the matter further and request that a report be prepared. When considering the circumstances from Mr. Gates's perspective at the time, Mr. Gates had a reasonable belief that the report would be unfavorable to this client, and that the unfavorable report would be discoverable by the State.FN3

> FN3  At the time of Mr. Gates's consultation with Mr. Biller and through the time of the trial in this case, Florida Rule of Criminal Procedure 3.220(d)(1)(B)(ii) rendered reports or statements of experts made in connection with the case discoverable by the prosecutor if the defendant elected to participate in discovery. The rule was amended in May 2018, to limit the discoverability of such statements or reports to ones that the defendant intends to use at a trial or hearing in the case.

Consequently, the Court finds that Mr. Gates did not render deficient performance. Therefore, Defendant is not entitled to relief.

Doc. 8-4, Ex. 19 at 259-60. The First DCA summarily affirmed without explanation.

Doc. 8-7, Ex. 22.

### 2.    *Brown Is Not Entitled To Habeas Relief*

The First DCA's summary affirmance is an "adjudication on the merits" of Brown's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

The state court's decision is not "contrary to" clearly established Federal law, because the state court identified and applied the two-part *Strickland* standard. *See Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Brown must show that the state court's application of the *Strickland* standard was unreasonable.

In reviewing the state court's decision, this court defers to the state court's factual findings, because they are amply supported by the record and because Brown has not rebutted them with clear and convincing evidence to the contrary. This deference extends to the state court's determination that Attorney Gates's testimony was credible. Eleventh Circuit precedent requires this deference. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state

trial court, but not by them." *Consalvo*, 664 F.3d at 845 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  The "AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence." *Consalvo* at 845 (citing 28 U.S.C. § 2254(e)).

Given the state court's findings of fact, fairminded jurists can concur in the state court's conclusion that Brown failed to establish deficient performance under *Strickland*. On habeas review, "the question is not whether counsel's actions were reasonable." *Richter*, 562 U.S. at 105. Rather, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

Trial counsel consulted with an accident reconstruction expert that his office had used in the past. After that expert, Mr. Biller, indicated that he needed additional information concerning the post-ejection locations of the vehicle occupants, Gates informed Biller specifically where that information was contained—in the depositions Gates provided him. Gates then emphasized to Biller the witness statement indicating that Brown was not the driver. Even after Biller considered this additional information, he still viewed the location of Brown's injuries as "problematic" for the defense, and indicated that if he prepared a report, it would indicate that Brown likely was the driver. Gates testified that his decision not to call

Biller as a witness was a strategic decision. Doc. 8-1, Ex. 17 at 444. Brown has not presented any evidence to suggest that Gates's decision was anything other than a matter of strategy.

The *Strickland* case, itself, instructs that in assessing an attorney's performance, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc).

Brown acknowledges the foregoing principles, but argues that Gates's decision not to move forward with the expert report was "based on an incomplete consultation." Doc. 12 at 33. Brown argues that Gates "needed to pinpoint or gather the available information and provide it to Mr. Biller so that a final opinion could be rendered." *Id*. at 33. According to Gates's testimony, which the state court credited, he did just that—he informed Biller that the information about the post-ejection locations of the occupants was located in the depositions he provided Biller. In addition, Gates emphasized to Biller the statement of Ms. Britton-Peters which favored Snow as the driver and Brown as the passenger. Biller, however, remained firm that the location of Brown's injuries was problematic, and that based on all of

the information he reviewed, his report would indicate that Brown likely was the driver of the vehicle.

A fairminded jurist could agree with the state court that Attorney Gates's performance satisfied *Strickland*'s deferential standard. The state court's rejection of Brown's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Brown is not entitled to federal habeas relief on Ground Five.[7]

## IV.   CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice

---

[7] Because Brown has not established an independent constitutional violation occurring at trial, his actual innocence claim is not cognizable on federal habeas. *See Raulerson v. Warden*, 928 F.3d 987, 1004 (11th Cir. 2019) ("[O]ur precedent forecloses habeas relief based on a prisoner's assertion that he is actually innocent of the crime of conviction 'absent an independent constitutional violation occurring in the underlying state criminal proceeding.'" (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002))).

of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. The amended petition for writ of habeas corpus, Doc. 3, challenging the judgment of conviction and sentence in *State of Florida v. Adam Dean Brown*, Okaloosa County Circuit Court Case No. 2013-CF-1154, be **DENIED**.

2. The District Court **DENY** a certificate of appealability.

3. The clerk of court close this case file.

At Pensacola, Florida, this <u>6th</u> day of December, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**